[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11073
Non-Argument Calendar

_____

D. C. Docket No. 07-00408-CV-FTM-29-DNF

KIMBERLI ESCARRA,

Plaintiff-Appellant,

versus

REGIONS BANK,
AMSOUTH BANK,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 27, 2009)

Before EDMONDSON, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Kimberli Escarra appeals the district court's order granting summary judgment in favor of Regions Bank (Regions) and AmSouth Bank (AmSouth) in a diversity action for (1) breach of oral and written contract, (2) negligent misrepresentation, fraudulent inducement, and promissory estoppel, and (3) wrongful termination under the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).[1] We address each claim in turn, and affirm.[2]

I.

Escarra contends the district court erred in granting summary judgment on her breach-of-contract claims because she failed to meet a condition precedent when she was terminated prior to January 31, 2007, for closing her office in direct

---

[1] Escarra abandoned any claim regarding the district court's denial of her claims for negligent misrepresentation and fraudulent inducement by failing to specifically address the issues in her initial brief.

[2] We review a district court's grant of summary judgment *de novo*. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. *Id.* "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

2

contravention of her supervisor's orders and mishandling a loan for a high-profile client.

Under Florida law[3], "[a] contingency or condition precedent contemplates the performance of some act or the happening of some event after a contract is entered into, upon which the obligation to perform the contract is made dependent." *Seaside Cmty. Dev. Corp. v. Edwards*, 573 So. 2d 142, 145 (Fla. 1st DCA 1991). "When the happening of a condition precedent is an element of a contract, no recovery can be had with regard to performance of the contract absent substantial compliance with the condition precedent." *Id.*

On February 21, 2006, AmSouth sent Escarra a letter providing her earnings for the year 2006 would be guaranteed at a minimum of $1,000,000. The agreement expressly provided Escarra would forfeit the guarantee if she (1) failed to maximize volume and earnings for both herself and the company or (2) was terminated for cause or resigned.

The evidence showed Escarra's supervisor sent her a letter on April 28, 2006, ordering "[Escarra's] office must remain open during standard AmSouth business hours." Nevertheless, she closed her office on July 3, 2006, a regular

---

[3] Under the *Erie* doctrine, a federal court sitting in diversity must apply the substantive law of the state. *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004).

business day. Thus, there was no disputed issue of material fact regarding whether Escarra failed to request permission before closing her office.

The record also demonstrates Escarra knew the high-profile loan involved the refinancing of a commercial loan on rental property owned by an LLC that originated in AmSouth's commercial loan department. There was no dispute she sought guidance up the chain of her own command rather than referring the loan to the commercial loan department. In doing so, Escarra omitted key information that could have saved delay in processing the loan, which was the major infraction identified by AmSouth. Thus, there was no disputed issue of material fact as to whether Escarra mishandled the loan.

The district court did not err by finding AmSouth had cause for terminating her employment because Escarra closed her office without prior permission on a regular business day and mishandled a high-profile loan. The guarantee required Escarra to be employed until January 31, 2007, and she was terminated for cause by AmSouth prior to that date. Because Escarra failed to complete a condition precedent to the guarantee, the district court did not err in granting summary judgement on her claims of breach of contract. *See Seaside Cmty. Dev. Corp.*, 573 So. 2d at 145.

II.

4

Escarra argues the district court erred by granting summary judgment in favor of Regions and AmSouth on her claims for promissory estoppel. She asserts her reliance on AmSouth's offer of at-will employment was reasonable because she was an employee at the time of the offer, she was a top-ranked performer for the company, and she was guaranteed $1,000,000 in earnings for 2006.

The basic doctrine of promissory estoppel under Florida law provides "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 924 (Fla. 1989)(citing Restatement (Second) Contracts § 90 (1979)). "The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice." *Id.* The satisfaction of the latter requirement depends upon "the reasonableness of the promisee's reliance," "its definite and substantial character in relation to the remedy sought," "the formality with which the promise is made," "the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise," and "the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant." *Id.*

5

"For promissory estoppel to be applied, the evidence must be clear and convincing." *Id.* at 925.

The Florida District Court of Appeals has addressed whether a plaintiff can reasonably rely on the defendant's offer of at-will employment. *Leonardi v. City of Hollywood*, 715 So. 2d 1007,1008 (Fla. 4th DCA 1998). After noting decisions by different states on the subject, it found the plaintiff's reliance on the defendant's offer of at-will employment was unreasonable based on the Restatement (Second) of Contracts § 90. *Id.* at 1010. It noted, had the defendant allowed the plaintiff "to begin working, it could have terminated his employment immediately thereafter, before he accrued any wages." *Id.* "Similarly, had [the plaintiff] not quit his prior position, his employer also could have terminated him at will." *Id.* Thus, it found the plaintiff could not maintain a claim for promissory estoppel. *Id.*

Escarra attempts to distinguish *Leonardi* because she was a current employee and top-ranked performer for AmSouth, and AmSouth acted definitively and expeditiously in attempting to secure her continued employment by guaranteeing her $1,000,000 in earnings for 2006. However, Escarra does not claim the guarantee letter changed the at-will nature of her employment. Thus, AmSouth could have terminated her employment before she accrued the right to

6

any wages under the guarantee. *See Leonardi*, 715 So. 2d at 1008. Moreover, AmSouth retained sole discretion to determine whether Escarra continued to maximize volume and earnings for herself and the company. Accordingly, the district court did not err in granting summary judgment on Escarra's promissory-estoppel claim because she did not demonstrate reasonable reliance on AmSouth's promise of at-will employment. *See id.* 1009-10.

## III.

Escarra asserts the district court erred in granting summary judgment on her claims for wrongful termination based on sex discrimination because AmSouth treated her less favorably than a similarly situated male coworker.

The Florida Civil Rights Act of 1992 (FCRA) protects employees from gender discrimination in the workplace. Fla. Stat. §§ 760.01-.11. Because the FCRA was patterned after Title VII, Florida courts rely on federal case law for guidance "insofar as that construction is not inharmonious with the spirit and policy of Florida's general legislation of the subject." *Russell v. KSL Hotel Corp.*, 887 So. 2d 372, 377 (Fla. 3d DCA 2004). Title VII prohibits, *inter alia*, an employer from discriminating against a person based on his or her sex. 42 U.S.C. § 2000e-2(a). Under Title VII, a plaintiff bears the ultimate burden of proving

discriminatory treatment by a preponderance of the evidence. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

A *prima facie* case of disparate treatment is established when the plaintiff demonstrates he "was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Where a plaintiff alleges discrimination in the application of work rules, he must prove he engaged in conduct similar to a person outside of the protected class and he received more severe treatment than the person who engaged in the similar misconduct. *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998).

To determine whether another employee was similarly situated, we consider whether that employee was "involved in or accused of the same or similar conduct" and disciplined in a different manner. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). In doing so, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* While we have called our "nearly identical" standard into doubt, *Maniccia*, as the

8

earlier panel decision, is still the controlling precedent. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 n.2 (11th Cir. 2006).

Escarra maintains Ernie Saltmarsh was a similarly situated employee because they both were "G Loan Officers", had similar production rankings, received guarantee letters, had the same supervisors, and were subject to the same disciplinary standards. However, she concedes Saltmarsh did not close his office in direct contravention of management's instructions and did not mishandle a loan for a board member's spouse. As discussed above, AmSouth had cause to terminate Escarra's employment because she closed her office during business hours in violation of an order and mishandled a high-profile client's loan. Accordingly, because Escarra and Saltmarsh did not engage in "nearly identical" misconduct, the district court did not err in finding she failed to make a *prima facie* case for sex discrimination. *See Maniccia*, 171 F.3d at 1368.

**AFFIRMED.**